IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BLACKBIRD TECH LLC d/b/a | ) | |
| BLACKBIRD TECHNOLOGIES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-284 (MSG) |
| | ) | |
| FASTLY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT
ON THE PLEADINGS THAT THE '335 PATENT IS INVALID UNDER 35 U.S.C. § 101**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
mflynn@mnat.com

*Attorneys for Defendant*

OF COUNSEL:

Daralyn J. Durie
Clement S. Roberts
Joseph C. Gratz
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA  94111
(415) 362-6666

September 15, 2017

# TABLE OF CONTENTS

I.      NATURE AND STAGE OF THE PROCEEDING..................................................1

II.     SUMMARY OF ARGUMENT .........................................................................1

III.    STATEMENT OF FACTS .............................................................................1

IV.     ARGUMENT ...............................................................................................1

        A.      Abstraction is a threshold legal issue which may be decided under
                FRCP 12...........................................................................................1

        B.      Abstraction is judged by a now-familiar two-part test.............................2

        C.      The claims should rise or fall together....................................................2

        D.      The claims of the '335 patent are directed to an abstract idea................3

        E.      The claims lack any transformative element that might save them ......10

        F.      The other claims do not impact the eligibility analysis or change the result.........16

V.      CONCLUSION............................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*,
  728 F.3d 1336 (Fed. Cir. 2013)...........................................................................2, 3

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
  838 F.3d 1253 (Fed. Cir. 2016)...............................................................................17

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  134 S. Ct. 2347 (2014)..................................................................................... *passim*

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
  841 F.3d 1288 (Fed. Cir. 2016)..................................................................................9

*Bascom Global Internet Services., Inc. v. AT&T Mobility LLC*,
  827 F.3d 1341 (Fed. Cir. 2016)..................................................................13, 14, 15

*buySAFE, Inc. v. Google, Inc.*,
  765 F.3d 1350 (Fed. Cir. 2014)........................................................................2, 12, 17

*Clarilogic, Inc. v. FormFree Holdings Corp.*,
  --- F. App'x ---, No. 2016-1781, 2017 WL 992528 (Fed. Cir. Mar. 15, 2017) ........................9

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
  859 F.3d 1352 (Fed. Cir. 2017)..................................................................................3

*CLS Bank Int'l v. Alice Corp. Pty.*,
  717 F.3d 1269 (Fed. Cir. 2013), aff'd, 134 S. Ct. 2347 (2014)...............................16

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014)...............................................................3, 9, 10, 17

*CyberSource Corp. v. Retail Decisions, Inc.*,
  654 F.3d 1366 (Fed. Cir. 2011)..................................................................................5

*DDR Holdings, LLC v. Hotels.com, L.P.*,
  773 F.3d 1245 (Fed. Cir. 2014)...........................................................................6, 11

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
  758 F.3d 1344 (Fed. Cir. 2014)................................................................................10

*EasyWeb Innovations, LLC v. Twitter, Inc.*,
  --- F. App'x ---, No. 2016-2066, 2017 WL 1969492 (Fed. Cir. May 12, 2017)....................10

*Genetic Techs. Ltd. v. Merial L.L.C.*,
  818 F.3d 1369 (Fed. Cir. 2016).................................................................................2

*I/P Engine, Inc. v. AOL Inc.*,
  No. 2013-1307, 2014 WL 3973501 (Fed. Cir. Aug. 15, 2014) (Mayer, J.
  concurring) ................................................................................................................2

*In re Bilski*,
  545 F.3d 943 (Fed. Cir. 2008), *aff'd, Bilski v. Kappos*, 130 S. Ct. 3218 (U.S.
  2010) .........................................................................................................................1

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
  792 F.3d 1363 (Fed. Cir. 2015) ........................................................5, 8, 9, 11

*Intellectual Ventures I LLC v. Symantec Corp.*,
  100 F.Supp.3d 371 (D. Del. 2015) ...........................................................6

*Intellectual Ventures I LLC v. Symantec Corp.*,
  838 F.3d 1307 (Fed. Cir. 2016) .....................................................6, 7, 8, 13

*Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*,
  811 F.3d 1314 (Fed. Cir. 2016) ................................................................5, 11

*SiRF Tech., Inc. v. Int'l Trade Comm'n*,
  601 F.3d 1319 (Fed. Cir. 2010) ......................................................................1

*Twilio, Inc. v. Telesign Corp.*,
  No. 16-CV-06925-LHK, 2017 WL 1374759 (N.D. Cal. Apr. 17, 2017) ................................6

*Ultramercial, Inc. v. Hulu, LLC*,
  772 F.3d 709 (Fed. Cir. 2014) ...............................................................11

## Rules and Statutes

35 U.S.C. § 101 ....................................................................................... *passim*

Fed. R. Civ. P. 12 .............................................................................................1, 2

I.  **NATURE AND STAGE OF THE PROCEEDING**

Plaintiffs filed this action for infringement of U.S. Patent No. 6,453,335 ("the '335 patent") on March 16, 2017 (D.I. 1) and filed an amended complaint on May 15. 2017 (D.I. 10). Defendant Fastly, Inc. filed an answer on June 2, 2017 (D.I. 12).  Fastly has moved to transfer this action to the Northern District of California (D.I. 16), and argument on that motion has been set for August 20, 2017.  (D.I. 25.)  Fastly has also filed a motion for judgment on the pleadings that the claims of the '335 patent are invalid under 35 U.S.C. § 101 as patent ineligible. This is Fastly's opening brief in support of that motion.

II.  **SUMMARY OF ARGUMENT**

Patent law protects only concrete and tangible inventions.  It does not protect abstract ideas, even when they are claimed in a particular context or in connection with conventional technology.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2358 (2014) ("*Alice*").  The sole patent challenged in this motion—the '335 patent—violates this principle.  The patent is directed to the abstract idea of modifying a communication based on third-party data.  The challenged claims add nothing to this abstract concept other than a generalized invocation of computers and the internet.  The claims are, therefore, invalid as abstract under 35 U.S.C. § 101.

III.  **STATEMENT OF FACTS**

The relevant facts are set forth in the Argument section, as appropriate.

IV.  **ARGUMENT**

A.  **Abstraction is a threshold legal issue which may be decided under FRCP 12**

"Whether a claim is drawn to patent-eligible subject matter under § 101 is a threshold inquiry" and "an issue of law."  *In re Bilski*, 545 F.3d 943, 950 (Fed. Cir. 2008), *aff'd, Bilski v. Kappos*, 130 S. Ct. 3218, 3225 (U.S. 2010) (describing § 101 as "a threshold test"); *SiRF Tech.*,

*Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1331 (Fed. Cir. 2010) ("patent-eligible subject matter is an issue of law.").

For this reason, the Federal Circuit repeatedly has held that patentable subject matter may be resolved under Federal Rule of Civil Procedure 12. *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373–74 (Fed. Cir. 2016) ("We have repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion."); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1351 (Fed. Cir. 2014) (upholding grant of §101 motion brought under Rule 12(c)); *I/P Engine, Inc. v. AOL Inc.*, No. 2013-1307, 2014 WL 3973501, at *11 (Fed. Cir. Aug. 15, 2014) (Mayer, J. concurring) ("Patent eligibility issues can often be resolved without lengthy claim construction, and an early determination … can spare both litigants and courts years of needless litigation.").

### B.   Abstraction is judged by a now-familiar two-part test

The Supreme Court has long held that abstract ideas are not patent eligible.  In *Alice*, the Supreme Court set forth a two-part framework for analyzing eligibility, namely: (1) determining whether the claims "are directed to [a] patent-ineligible concept[]," and if they are, (2) determining whether the claims contain "additional elements [that] 'transform the nature of the claim' into a patent-eligible application." *Alice*, 134 S. Ct. at 2355.[1]

### C.   The claims should rise or fall together

The inquiry under § 101 turns on the subject matter of the claims and not on minor variations or the form in which they are written.  Thus, the Supreme Court has "long warn[ed] ... against interpreting § 101 in ways that make patent eligibility depend simply on the draftsman's

---

[1]   Here, and throughout the brief, internal citations and [] are omitted unless otherwise specified.

art." *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2360 (2014); *see also Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336 (Fed. Cir. 2013) (system claims should rise and fall with method claims despite their recitation of additional hardware components).

In line with this principle, an applicant may challenge eligibility through representative claims and without engaging in a repetitive attack on each claim individually.  For example, in *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, the plaintiff objected that the movant's (and the district court's) failure "to individually address every one of its claims is inconsistent with the statutory presumption of validity."  776 F.3d 1343, 1348 (Fed. Cir. 2014).  The Federal Circuit rejected this assertion and instead found that the "district court . . . correctly determined that addressing each claim of the asserted patents was unnecessary" because "all the claims are 'substantially similar and linked to the same abstract idea.'"  *Id.  See also Cleveland Clinic Found. v. True Health Diagnostics LLC,* 859 F.3d 1352, 1360 (Fed. Cir. 2017) ("Where, as here, the claims 'are substantially similar and linked to the same' law of nature, analyzing representative claims is proper")*.*  All of the claims in the '335 patent are substantially similar, addressed to the same abstract idea, and contain (at best) entirely generic computing references.  The claims should, therefore, rise or fall together.

**D.**     <u>**The claims of the '335 patent are directed to an abstract idea**</u>

The claims of the '335 patent are directed to the abstract idea of modifying a communication based on third-party data.  As the specification explains:

> A basic idea of the invention is to establish the third party data channel by intercepting the data communications transmitted on an existing data channel between a server and a client …[I]f a predetermined data code … is detected or some other condition is met, the third party data is inserted into the communication on the existing data channel, or said communication is modified otherwise on the basis of the third party data or even replaced by the third party data.

'335 at 1:66-2:11.  As the patent depicts this idea (in Figure 1) the invention intercepts a message

(between server 10 and client 12) and then changes it (in some unspecified way) based on some

(unspecified) third party data source (20):



The claims of the '335 patent track this idea precisely.  For example, Claim 1 – which is

representative – calls for:

> 1. A method for providing an internet third party data channel, said third party data channel being established within an existing data channel between an internet server and an internet client, said third party data channel connecting a data source distinct from said internet server to said internet client, said method including the steps of:
>
> a) using a processing device distinct from said internet server for monitoring said existing data channel for a data communication having a predetermined property, said data communication having an intended recipient of one of said internet server and said internet client,
>
> b) upon detection of said data communication, performing:
>
> b1) the step of accessing said data source to obtain third party data,
>
> b2) a step selected from the group consisting of the step of modifying said data communication in response to said third party data and the step of replacing said data communication in response to said third party data to obtain a resultant data communication, and
>
> b3) the step of sending said resultant data communication to said intended recipient.

As its plain language shows, Claim 1 is directed to a method that comprises the following steps: (i) ***monitoring*** a communication channel (using any device other than the server itself); (ii) ***detecting*** a "data communication" between the end points; (iii) ***accessing*** a third-party data source; (iv) ***replacing*** or ***modifying*** the communication in response to the third-party data and (v) ***delivering*** the result.

This is an abstract idea.  Indeed, fundamentally, the process is no different from the process performed by many brick-and-mortar institutions.  A prison mail office, for example: (i) monitors the mail between prisoners and their families; (ii) detects a data communication (e.g., a letter) between them; (iii) accesses a third-party data source (e.g., an FBI database on known gang affiliates, or the Department of Correction's policies and procedures manual); (iv) replaces or modifies the communication (e.g., by redaction or by replacing a contraband magazine with a notice that it has been seized) based on the third party data; and (v) delivers the result.  The Army does the same thing with mail between soldiers and their families, and regional television stations do likewise when they insert local advertisements into national television broadcasts.

The *fact* that the method set forth in Claim 1 describes numerous real-world processes is a strong indication that the claim is directed to an abstract idea.  *See Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015) (finding an email processing software program to be abstract through comparison to a "brick and mortar" post office); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011) (claim for verifying the validity of a credit card transaction over the Internet was invalid because the "steps can be performed in the human mind, or by a human using a pen and paper"); *Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324 (Fed. Cir. 2016) (claims for computer-implemented system to enable borrowers to anonymously shop for loan packages were abstract

where "[t]he series of steps covered by the asserted claims ... could all be performed by humans without a computer"); *Intellectual Ventures I LLC v. Symantec Corp.*, 100 F.Supp.3d 371, 383 (D. Del. 2015) ("Another helpful way of assessing whether the claims of the patent are directed to an abstract idea is to consider if all of the steps of the claim could be performed by human beings in a non-computerized 'brick and mortar' context."); *Twilio, Inc. v. Telesign Corp.*, No. 16-CV-06925-LHK, 2017 WL 1374759, at *9 (N.D. Cal. Apr. 17, 2017)  ("Another helpful tool used by courts in the abstract idea inquiry is consideration of whether the claims have an analogy to the brick-and-mortar world"); *cf DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1258 (Fed. Cir. 2014)(finding eligible a patent that addresses "a problem that does not arise in the 'brick and mortar' context").

The Federal Circuit has repeatedly found similar claims to be directed to abstract ideas. The most analogous examples, in this regard, are the three patents found abstract in *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307 (Fed. Cir. 2016).

First, the Federal Circuit considered the '050 patent.  The exemplary claim of that patent called for:

> 9.  A method for identifying characteristics of data files, comprising:
>
> receiving, on a processing system, file content identifiers for data files from a plurality of file content identifier generator agents, each agent provided on a source system and creating file content IDs using a mathematical algorithm, via a network;
>
> determining, on the processing system, whether each received content identifier matches a characteristic of other identifiers; and
>
> outputting, to at least one of the source systems responsive to a request from said source system, an indication of the characteristic of the data file based on said step of determining.

According to the Federal Circuit, this claim was abstract because "receiving e-mail (and other data file) identifiers, characterizing e-mail based on the identifiers, and communicating the characterization—in other words, filtering files/e-mail—is an abstract idea." *Id*. That is also the abstract idea at issue in Claim 1 of the '335 patent – with the slight difference that the '335 patent performs the filtering using (unspecified) third-party data.

Next, the Federal Circuit found that the following claim (from the '142 patent) was directed to an abstract idea:

> 1. A post office for receiving and redistributing email messages on a computer network, the post office comprising:
>
> a receipt mechanism that receives an e-mail message from a sender, the e-mail message having at least one specified recipient;
>
> a database of business rules, each business rule specifying an action for controlling the delivery of an e-mail message as a function of an attribute of the e-mail message;
>
> a rule engine coupled to receive an e-mail message from the receipt mechanism and coupled to the database to selectively apply the business rules to the e-mail message to determine from selected ones of the business rules a set of actions to be applied to the e-mail message; and
>
> a distribution mechanism coupled to receive the set of actions from the rule engine and apply at least one action thereof to the e-mail message to control delivery of the e-mail message and which in response to the rule engine applying an action of deferring delivery of the e-mail message, the distribution engine automatically combines the email message with a new distribution list specifying at least one destination post office for receiving the e-mail message for review by an administrator associated with the destination post office, and a rule history specifying the business rules that were determined to be applicable to the e-mail message by at least one rule engine, and automatically delivers the e-mail message to a first destination post office on the distribution list instead of a specified recipient of the e-mail message.

In describing its reasoning for finding this claim abstract, the Federal Circuit analogized it to the workings of a corporate mailroom:  "Such mailrooms receive correspondence, keep

business rules defining actions to be taken regarding correspondence based on attributes of the correspondence, apply those business rules to correspondence, and take certain actions based on the application of business rules. Those actions include gating the message for further review … and also releasing, deleting, returning, or forwarding the message….” *Id* at 1317.

The claims of the '335 patent are directed to a very similar process.  As noted above, the method recited in Claim 1 is also highly analogous to the operation of a mailroom.  Indeed, modify the mailroom in the Federal Circuit's example to specify that it looks up the "business rules" in a third party data source and the Federal Circuit's analogy would apply *verbatim* to Claim 1 of the '335 patent.

The third patent invalidated in *Intellectual Ventures* is also a close analogue.  Claim 1 of that patent (the '610) provided:

> 1. A virus screening method comprising the steps of:
>
> routing a call between a calling party and a called party of a telephone network;
>
> receiving, within the telephone network, computer data from a first party selected from the group consisting of the calling party and the called party;
>
> detecting, within the telephone network, a virus in the computer data; and
>
> in response to detecting the virus, inhibiting communication of at least a portion of the computer data from the telephone network to a second party selected from the group consisting of the calling party and the called party.

*Id*. at 1319.

Like the claims of the '335 patent, Claim 1 of the '610 patent calls for receiving data at some intermediary point in a network pathway between a sender and a receiver, evaluating that data, and then modifying the information sent to the receiving party.  Indeed, the claims of the

'610 patent (which are directed at inhibiting the retransmission of computer viruses through a telephone network) are more specific, and therefore less preemptive, than the claims of the '335 patent (which cover all data communications and network types, as well as both modifications *and* replacements of the original message).  Indeed, the only way in which Claim 1 of the '335 patent is *narrower* than claim 1 of the '610 patent is that it  specifies that the modification is (in some unspecified way) "in response to" (some unspecified kind) of third-party data.  But that is just a difference in the substance of the idea – not a difference in whether or not it is abstract.[2]

The fact that the three patents invalidated in *Intellectual Ventures* are so similar to the claims at issue in this motion is a strong indication that the claims are directed to an abstract idea.  *See Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016) ("the decisional mechanism courts now apply is to examine earlier cases in which a similar or parallel descriptive nature can be seen…").

In analyzing the claims of the '335 patent under the first step of *Alice*, the Court should also consider the numerous cases in which the Federal Circuit has considered patents directed to various processes for gathering and analyzing data.  *See, e.g.*, *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (finding that the asserted claims were "drawn to the abstract idea of 1) collecting data; 2) recognizing certain data within the collected data set and 3) storing that recognized data in a memory."); *Clarilogic, Inc. v. FormFree Holdings Corp.*, --- F. App'x ---, No. 2016-1781, 2017 WL 992528, at *1 (Fed. Cir. Mar. 15, 2017) ("When the focus of the asserted claims is on

---

[2]   Indeed, the idea of using third-party data is *implicit* in the process of virus screening because that process necessarily relies on a set of third party rules, e.g., those created by the maker of the anti-virus software.  *See, e.g.*, '610 at 6:10-12 ("Preferably the step of screening the computer data includes screening the computer data for a plurality of predetermined computer viruses.")

collecting information, analyzing it, and displaying certain results … the claims are directed to an abstract idea."); *EasyWeb Innovations, LLC v. Twitter, Inc.*, --- F. App'x ---, No. 2016-2066, 2017 WL 1969492, at \*1-2 (Fed. Cir. May 12, 2017) (finding abstract aims "reciting the familiar concepts of receiving, authenticating, and publishing data").  Although the specific *acts* of data manipulation at issue in these cases are different from those recited in the '335 patent, the overall pattern of the decisions shows that claims directed to data manipulation are abstract under the first prong of *Alice*.  Indeed, the Federal Circuit has expressly held that, "[w]ithout additional limitations, a process that employs mathematical algorithms to manipulate existing information to generate additional information is not patent eligible." *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014).

That is exactly what Claim 1 of the '335 patent does – it takes in data, manipulates it (by changing it in some unspecified way or replacing it with other unspecified information) using (unspecified) third-party information, and then outputs the result.  It is, therefore, directed to an abstract idea under the first prong of the *Alice* framework.

### E.    The claims lack any transformative element that might save them

Under the second step of *Alice*, the Court must "consider the elements of the claim—both individually and as an ordered combination—to assess whether the additional elements transform the nature of the claim into a patent-eligible application of the abstract idea. This is the search for an 'inventive concept'—something sufficient to ensure that the claim amounts to 'significantly more' than the abstract idea itself." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014)).

The Supreme Court and the Federal Circuit have repeatedly held that "[w]holly generic computer implementation is not generally the sort of 'additional featur[e]' that provides any 'practical assurance that the process is more than a drafting effort designed to monopolize the

10

[abstract idea] itself." *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2350–51 (2014); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1368 (Fed. Cir. 2015) ("[I]t is clear that the claims contain no inventive concept. The recited elements, e.g., a database, a user profile … and a communication medium, are all generic computer elements. Instructing one to 'apply' an abstract idea and reciting no more than generic computer elements performing generic computer tasks does not make an abstract idea patent-eligible[.]"); *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed.Cir.2014) ("[A]fter *Alice*, there can remain no doubt: recitation of generic computer limitations does not make an otherwise ineligible claim patent-eligible.").

Yet generic computer elements are all that Claim 1 recites.  In particular, it calls for the claimed method to be performed using: (i) an "internet server," (ii) a "client," (iii) a "data channel," (iv) a "processing device," and (v) a "data source."  None of these are the kind of inventive concepts which might satisfy the second prong of the *Alice* analysis.  *See, e.g.*, *Alice*, 134 S. Ct. at 2360 (finding ineligible claims containing a "data processing system" with a "communications controller" and "data storage unit" which are "purely functional and generic" components for "performing the basic calculation, storage, and transmission functions required by the method claims."); *Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324–25 (Fed. Cir. 2016) ("No such inventive concept is present here. Instead, the claims 'add' only generic computer components such as an 'interface,' 'network,' and 'database.' These generic computer components do not satisfy the inventive concept requirement."); *Intellectual Ventures I v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed Cir., 2015) ("the 'interactive interface' simply describes a generic web server with attendant software, tasked with providing web pages to and communicating with the user's computer"); *Ultramercial, Inc. v. Hulu, LLC*,

11

772 F.3d 709, 716 (Fed. Cir. 2014) ("The claims' invocation of the Internet also adds no inventive concept.")

Indeed, the '335 patent is *explicit* about the fact that each of the aforementioned components is generic and conventional.  *See* '335 at 1:23-25 ("A well-known example of such a client/server application in the context of the internet is the World Wide Web[.]"); 3:2-5 ("The term 'data channel' as used herein shall be understood as denoting any logical or physical path for transferring or communicating data between two entities."); 4:47-48 ("the client 12 is a standard World Wide Web browser"); 8:7-9 ("the control module 62 of the browser 60 (running on a standard personal computer) serves as the processing device."); 5:1-2 ("A third party data source 20, for example a data base, is connected to the processing device[.]"); 8:2-4 ("In this sample embodiment, the data source 20 is an internet server.")

Put differently, the '335 patent *admits* that it is intended to run on "standard" and well-known components that are part of the fabric of the conventional internet.  Thus, the claims call for an abstract idea to be performed *in the context* of a conventional technological environment. That is not sufficient to transform them into something patent eligible.  *See buySAFE, Inc. v. Google, Inc*., 765 F.3d 1350, 1354 (Fed. Cir. 2014) ("Neither 'attempting to limit the use of [the idea] to a particular technological environment' nor a 'wholly generic computer implementation' is sufficient.")

Considering the claim limitation as an "ordered combination" does not change the analysis.  To the contrary, "considered 'as an ordered combination,' the computer components … add nothing ... that is not already present when the steps are considered separately." *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2359 (2014).

*Intellectual Ventures I LLC v. Symantec Corp*., 838 F.3d 1307 (Fed. Cir. 2016), is once again a good analogue.  In that case the Federal Circuit explained that the virus screening method of the '610 patent failed the second prong of *Alice* even though it "calls for at least three computers: the computer of the first party or sending party, the virus screening computer, and the computer of the second or receiving party."   *Id.* As the court explained, "[t]he sending and receiving computers can be generic—they perform only sending and receiving functions. … The virus screening computer fares no better" because it can be performed with a "conventional telephone network processor." *Id.*

The same is true of Claim 1 of the '335 patent.  The client and server are conventional and do nothing other than send and receive some (unspecified) data communication.  The "processing device" and "data source" in the middle are, meanwhile, completely unspecified – and do nothing other than look up some kind of (unspecified) data and then use it in an (unspecified) way to modify or replace the message.  Put differently, there is nothing about the ordered combination of the claim elements that would substantially mitigate "the preemption concern that undergirds our § 101 jurisprudence."  *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2358 (2014).

*Bascom Global Internet Services., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1345 (Fed. Cir. 2016), is not to the contrary.  In *Bascom*, the Federal Circuit considered the eligibility of:

> 1. A content filtering system for filtering content retrieved from an Internet computer network by individual controlled access network accounts, said filtering system comprising:
>
> a local client computer generating network access requests for said individual controlled access network accounts;
>
> at least one filtering scheme;
>
> a plurality of sets of logical filtering elements; and

13

> a remote ISP server coupled to said client computer and said
> Internet computer network, said ISP server associating each said
> network account to at least one filtering scheme and at least one set
> of filtering elements, said ISP server further receiving said network
> access requests from said client computer and executing said
> associated filtering scheme utilizing said associated set of logical
> filtering elements.

The Federal Circuit found that this claim **was** directed to an abstract idea (namely filtering content) [3] and that "the limitations of the claims, taken individually, recite generic computer, network and Internet components, none of which is inventive by itself." *Id* at 1349. But the Court found that, on the record before it, "this specific method of filtering Internet content cannot be said, as a matter of law, to have been conventional or generic" because the "claims carve out a specific location for the filtering system (a remote ISP server) and require the filtering system to give users the ability to customize filtering for their individual network accounts." *Id* at 1350,1352.

The claims of the '335 patent have no such requirement. Among other things, the claims do **not** require the filtering to take place in a particular location. Indeed, the only arguably analogous requirement in Claim 1 is that the "processing system" and the third party "data source" are "distinct from" the internet server. But this is not a requirement that the filtering occur in a specific location – just a requirement that it is not performed on the internet server

---

[3] *Id.* at 1348 ("We agree with the district court that filtering content is an abstract idea because it is a longstanding, well-known method of organizing human behavior, similar to concepts previously found to be abstract.")

itself. [4]   Indeed, the '335 specification is explicit that the a **conventional** web browser can perform the claimed filtering.  *See* '335 at 3:30-35 ("It is also possible that the client itself monitors, parses and modifies the data sent from and to the server that has been accessed by the user, and obtains the third party data by opening a further connection to a third party server"); 8:6-8 ("the display module 64 of the browser 60 serves as the client, **and the control module 62 of the browser 60 (running on a standard personal computer) serves as the processing device**") (emphasis added).  Thus, claim 1 of the '335 patent does not require the filtering even to be performed by an intermediary device, much less in a specific, unconventional and inventive location.

Nor does claim 1 of the '335 patent contain any element analogous to the *Bascom* limitation requiring "the filtering system to give users the ability to customize filtering for their individual network accounts."  The closest analogue to this requirement in claim 1 of the '335 patent is the requirement that the filtering processed use third party data.  But the idea of using some (unspecified) third party data from some (unspecified) third party data source, as some

---

[4]   Notably, several prior-art references cited on the face of the '335 patent discuss performing contenting filtering at locations other than on the server that provides the content.  *See* '335 (first line of right hand column of the first page) *citing* U.S. Patent 6,233,618 at 3:36-40 ("The present invention overcomes these and other problems of prior art network data access control systems. This invention exists typically as a software program installed on a network device interconnected between typically a first and second computer network.").   More broadly, the idea of performing data filtering somewhere **other than** at the place where the data originated is a well-known idea.  Every time the U.S. Post Office screens a letter to Santa, every time the jail screens a letter to a prisoner, and every time a local TV station inserts content into a national TV broadcast, they filter content at a location other than the origin of the data.

(unspecified) part of the filtering process is *in itself* an abstract idea, and therefore cannot ensure that the claim it is directed to "substantially more" than the monopolization of an abstract idea.[5]

Put simply, there is nothing in these claims other than an abstract idea (which could be and is performed in many brick and mortar contexts) and a few references to generic and conventional computer equipment that (at most) restricts the abstract idea to a particular technological context – namely, a computer network.  As a matter of law, that does not render the claims patent eligible.

### F.      The other claims do not impact the eligibility analysis or change the result.

None of the other claims in the '335 patent have any impact on the analysis.   Indeed, the other independent  claims are directed to the same method as claim one, with only immaterial differences – such as (for claim 18) being written as an apparatus claim and (for claim 26) being written as a "*Beauregard*" claim.   Both the Supreme Court and the Federal Circuit have repeatedly warned that minor differences of this kind should have no impact on the eligibility analysis.  *See Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2360 (2014)("We have long warn[ed] ... against interpreting § 101 in ways that make patent eligibility depend simply on the draftsman's art."); *CLS Bank Int'l v. Alice Corp. Pty.*, 717 F.3d 1269, 1288 (Fed. Cir. 2013), aff'd, 134 S. Ct. 2347, (2014) ("[D]iscrete claims reciting subject matter only nominally from different statutory classes may warrant similar substantive treatment under § 101 when, in practical effect, they cover the same invention. That may be particularly apparent where, as here,

---

[5]     It is worth noting, in this regard, that the third party "data source" also does not need to be in a specific location.  In fact, given that claim 7 adds an *additional* requirement that the data source is "independent" of at least one of the client or server, the "data source" recited in Claim 1 need not even be independent – much less in a particular location.

a claim presents a physical recitation of an abstract method, and parallel claims from the same patent family claim that same abstract method in the same or similar terms.").

The differences in the dependent claims are equally immaterial. These claims simply add references to generic and conventional technology or call out some of the various options existing *within* the scope of the independent claims. For example, some dependent claims call for the use of an (unspecified) "data code" as a trigger for the filtering process (claims 2, 4, 11, 16 and 28) while others make choices about whether the recited functions should be performed on the same or different physical computers (claims 6, 7, 14, 15, 23). None of these additions change the nature of the abstract idea or the overall analysis. *See Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1264 (Fed. Cir. 2016), (finding dependent claims abstract where they "recite functions that are not inventive but simply constitute particular choices from within the range of existing content or hardware."); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("The dependent claims' narrowing to particular types of such relationships, themselves familiar, does not change the analysis."); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) ("[A]ll of the additional limitations in the [dependent] claims cited in CET's appeal brief recite well-known, routine, and conventional functions of scanners and computers. Thus, while these claims may have a narrower scope than the representative claims, no claim contains an 'inventive concept' that transforms the corresponding claim into a patent-eligible application.").

## V.    **CONCLUSION**

The claims of the '335 patent are directed to an abstract idea without any kind of "additional element" that would ensure that they do not preempt all use of that idea on the internet. The Court should, therefore, find the claims ineligible under 35 U.S.C. § 101.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

_____

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
mflynn@mnat.com

*Attorneys for Defendant*

OF COUNSEL:

Daralyn J. Durie
Clement S. Roberts
Joseph C. Gratz
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA  94111
(415) 362-6666

September 15, 2017

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2017, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on September 15, 2017, upon the following in the manner indicated:

Stamatios Stamoulis, Esquire                                     *VIA ELECTRONIC MAIL*
Richard C. Weinblatt, Esquire
STAMOULIS & WEINBLATT LLC
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE  19809
*Attorneys for Plaintiff*

Christopher Freeman, Esquire                                     *VIA ELECTRONIC MAIL*
John Handy, Esquire
Wendy Verlander, Esquire
David Gerasimow, Esquire
BLACKBIRD TECH LLC
One Boston Place, Suite 2600
Boston, MA 02108
*Attorneys for Plaintiff*


*/s/ Jack B. Blumenfeld*

_____

Jack B. Blumenfeld (#1014)